E. W. HARDING and Sam Huckfeldt, Appellants (Defendants below),

v.

Bernard G. HAAS, Appellee (Plaintiff below).

No. 3561.

Supreme Court of Wyoming.

May 31, 1967.

Joseph F. Maier, Torrington, for appellants.

John O. Callahan, Torrington, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Chief Justice HARNSBERGER delivered the opinion of the court.

This is an appeal in a civil action tried to the court without a jury and was disposed of by a judgment awarding to the appellee, plaintiff below, the sum of $2,500 and costs against the appellants, the defendants below, and each of them.

Plaintiff's complaint alleged that the parties entered into an oral partnership agreement for the feeding of lambs and wintering of ewes and ewe lambs during the feeding year of 1964–1965; that the profits from the partnership were to be divided one-half to defendant Harding, one-fourth to defendant Huckfeldt, and one-fourth to the plaintiff Haas; that the defendants did not account for or pay to the plaintiff his share of the profits from the venture; and that the defendants owed plaintiff the sum of $6,610 as his share of profit.

Harding's answer admitted that he was a partner in the firm of Harding and Kirkbride in the feeding of lambs and wintering of ewes and lambs during the period involved but denied other allegations of the plaintiff's complaint, although he also alleged that during the same period the firm of Harding-Kirkbride engaged in a partnership operation with defendant Huckfeldt for the feeding and wintering of lambs and ewes and ewe lambs; that the profit of $13,644.87 from this enlarged partnership feeding operation for the 1964–1965 period was divided one-half to Harding and one-half to Huckfeldt; that plaintiff Haas was employed by Huckfeldt to render labor and services to the partnership operation (evidently referring to the partnership between the firm of Harding-Kirkbride and Huckfeldt), and that this partnership had contracted with plaintiff Haas to purchase feed from plaintiff's farm for use in feeding the partnership livestock; that plaintiff's compensation for labor and services was the sole responsibility of Huckfeldt; and that any amounts due plaintiff were due solely from Huckfeldt without liability on Harding's part.

Huckfeldt's answer admitted he was engaged as a partner with the firm of Harding-Kirkbride in feeding of lambs and wintering of ewes and ewe lambs during the period involved herein, but denied the other allegations of the plaintiff's complaint. Huckfeldt also alleged the feeding operations were those of the Harding-Kirkbride and Huckfeldt partnership only; that all of the sheep fed and wintered by that partnership operation were purchased and title taken in the name of Harding-Kirkbride and Huckfeldt; that all partnership purchases were made by Harding-Kirkbride and Huckfeldt; that plaintiff Haas was not and never at any time had been a partner in the sheep feeding operation; that the net profit from the operation was divided equally between Harding-Kirkbride and Huckfeldt; that the partnership of Harding-Kirkbride, with Huckfeldt, contracted with plaintiff Haas for the purchase of feed for use in their partnership feeding operation; that plaintiff was employed by this partnership to render labor and services and assist in the moving and handling of the sheep during the feeding year of 1964–1965; and

that plaintiff refused to sell feed to the partnership during the period of the operation after having orally contracted to do so, and plaintiff has failed and refused to render labor and services in accordance with his employment contract except to the extent of less than ten days total time, the reasonable value of such services rendered being the sum of $223.50 (appellants' testimony and brief indicate the amount to be $210).

The appellants say their contentions are:

1. The court failed to take into account and give necessary legal effect to the uncontradicted evidence of plaintiff that the partnership or joint venture was dissolved;

2. That the judgment was contrary to law, as a partner is not entitled to share in profits earned after dissolution of the partnership where the partner has no interest in the assets or capital of the firm; and

3. There is a total lack of evidence to support the amount of the judgment awarded by the court to the plaintiff.

The salient facts appearing from the record are that in the fall of 1964 some 5,000 head of lambs and ewes, owned by defendant Harding and his firm of Harding-Kirkbride, were fed and wintered in an operation in which the plaintiff and the defendants participated under the terms of an oral contract. At the conclusion of the operation, defendant Harding paid all of the bills and expenses incurred, as was required by the contract, and there was realized a net profit of $13,644.87, which defendant Harding divided equally between himself and Huckfeldt. No amount was paid to the plaintiff by either Harding or Huckfeldt, but Huckfeldt did deposit the sum of $210 in court as the amount he concluded was due the plaintiff for his services. Both defendant Huckfeldt and plaintiff rendered labor and services during the fall and winter of 1964, up to February 5, 1965. At that time defendant Harding advised plaintiff that he was out of the feeding operation and that plaintiff was discharged.

The position taken by defendants in this appeal seems to us to be quite ambiguous. In one breath they call the arrangement a joint venture, in another they call it a partnership undertaking, and again they say the plaintiff was employed by Huckfeldt to render labor and services to the partnership operation of Harding-Kirkbride and Huckfeldt, and Huckfeldt says the plaintiff was never at any time a partner in the feeding operation. Also the defendants assume they had the right to "discharge" the plaintiff, thus again fixing the status of the plaintiff as that of an employee rather than that of a partner or as a joint venturer.

Notwithstanding these various inconsistent positions, the appellants first proceed on their assumption that the arrangement was a partnership or, as they parenthetically express it, a joint venture, claiming that this arrangement was dissolved. Again, the appellants take a dual position as to their legal justification for dissolving the Harding-Kirkbride-Huckfeldt-Haas partnership, saying first that the plaintiff was expelled under the authority of § 17-225, W.S.1957, which provides that dissolution is caused by expulsion of a partner in accordance with a power conferred by the agreement of the parties, notwithstanding no such power was given by the oral contract, and second that, under the authority of a further provision of the statute, the dissolution was caused by the express will of a partner. This latter position indicates appellants are claiming that by the action of Mr. Harding the plaintiff was expelled from the partnership.

Insofar as the question of whether or not the plaintiff was legally expelled or excluded from the operation, it appears that plaintiff did not perform services after February 5, 1965. In consequence the legality of the appellants' positions as to the manner in which plaintiff was ousted is of little, if any, importance.

Similarly, it would seem acceptable to assume that plaintiff has conceded that his only contribution to the partnership, joint

venture, or employment, was the rendering of his and his wife's personal services up to February 5, 1965, although he testified he performed a few services thereafter. This disposes of the second contention of the appellants, as the court's judgment does not award plaintiff the full one-fourth of profits, i. e., $3,411.22. This leaves for our consideration only appellants' third contention which is that there was no evidence to support the amount for which the court gave plaintiff judgment.

Defendants' own evidence, which was favorable to plaintiff, indicated that in years prior to the period involved in the present litigation there had been care and feeding contracts between the parties, but that when the feeding year was over they started all over again, thus indicating the contract relied upon by plaintiff here was an entirely separate and independent agreement complete in itself and not incorporating by implication any terms of previous contracts, even though the contracts in the different years might be identical; that under the instant agreement plaintiff furnished feed yard; that he worked, looked after some of the sheep camps, sorted sheep, hauled water and supplies, furnished one-fourth of the sheep panels, the sheep wire, and self-feeders, in which plaintiff had an interest (which equipment was later divided with plaintiff taking his share), until January 15, 1965, when Harding told plaintiff he "was out"; that the feeding period 1964–1965 started the first of October, 1964, the deal being made the latter part of September, 1964; that defendant Harding told plaintiff, "if you would drop out [of the operation] that is when your end would come" but that plaintiff never said " 'I am out of this' "; that defendants never attempted to move the sheep onto plaintiff's place, and the plaintiff never refused to have this done; and that defendant Harding never offered to settle with plaintiff and never paid him one-fourth of the profits.

Plaintiff's own evidence was that the sheep were under his care from the first part of October, 1964; that he furnished a feed lot, hauled water twice a day for the sheep, made grocery lists, moved sheep, attended the sheep camps, hauled supplies, drove his truck 2,000 miles at his own expense, built corrals, moved sheep camps, picked up wool, brought camps coal, wood, and water, built sorting pens, sorted sheep, had something to do daily, and did everything necessary to be done in the sheep operation; that he never denied the partnership the use of his feed yards or the use of his feed; that defendants never told him they wanted his feed; that on February 5, 1965, defendant Harding said to him " 'if you don't get the cows off there, you are out of the feeding deal' "; that after February 1, 1965, plaintiff moved sheep camp, attended sheep camp, tore down corrals where necessary, and hauled wool; that he was never told he was through with the profit sharing; that Harding had said to him (in the forepart of February, 1965), " 'If you don't move the cows off that feed, you are no longer a *partner*' " (emphasis supplied); that plaintiff did not intend to let his feed go to waste but fed it to his cattle because defendants never said whether or not they were going to use his feed; that it was not agreed defendants would buy his feed; that the 1964–1965 agreement was different from agreements of previous years, and the 1964–1965 agreement was that defendants could buy his feed if his feed was available; and that both plaintiff and his wife participated in moving the sheep.

Finally, defendant Harding testified he could not say plaintiff did not perform services in January, 1965; that defendant did not ask to use plaintiff's feed yard, and when Harding asked Haas for his feed, they got into an argument, and Harding got mad and blew up the deal.

In the face of this evidence, we cannot say a judgment in favor of plaintiff was not supported by the evidence.

Thus we come to appellants' final claim that there was a total lack of evidence to support the amount awarded plaintiff.

It seems clear under the evidence that if plaintiff had been permitted to participate in the operation until its final completion he would have been entitled to receive a full one-fourth of the profits realized from the undertaking. It is equally clear that his failure to continue in the operation after February 5, 1965, was induced by defendants' action when Harding got mad and "blew up the deal." After all, the sheep belonged to Harding, and plaintiff was left with no other alternative but to discontinue performance of his part of the agreement.

Under those circumstances, it might be considered that plaintiff was entitled to a full one-fourth share of the profits. However, we are not critical of the trial court's obvious conclusion that this one-fourth share should be reduced by taking into consideration the fact that plaintiff did not actually perform substantial service to the operation after February 5, 1965.

There was evidence that part of the sheep were marketed in January, some in February, and on March 17, 1965. Whether any further sales of "selling sheep" were made after March 17, 1965, does not appear. In consequence, plaintiff's services covered in the neighborhood of four months of the something more than the five months of total operating period.

We cannot see how the trial judge could do more in defendants' behalf than to accept their own theory that "if you would drop out [of the operation] that is when your end would come" and apportion to plaintiff the court's best approximation of the amount due plaintiff for his actual services rendered toward earning his one-fourth share of profits. This we feel was fairly done by the trial court, and its judgment will not be disturbed.

Affirmed.